LORI HALLMAN,             )
                               )
          Plaintiff       )    Civil Action
                               )    No. 11-cv-02834
      v.                )
                               )
PPL CORPORATION,       )
                               )
          Defendant      )
                               )

\*     \*     \*

APPEARANCES:

        DONALD P. RUSSO, ESQUIRE
           On behalf of Plaintiff

        STEVEN E. HOFFMAN, ESQUIRE
        EDWARD J. EASTERLY, ESQUIRE
           On behalf of Defendant

\*     \*     \*

JAMES KNOLL GARDNER
United States District Judge

## O P I N I O N

This matter is before the court on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, which motion to dismiss was filed April 2, 2012 ("Defendant's Motion to Dismiss").[1]

### SUMMARY OF DECISION

In this employment discrimination action, plaintiff Lori Hallman alleges that she was subjected to sexual harassment (and retaliation for objecting to sexual harassment) and age

---

[1] Defendant's Motion to Dismiss was filed together with Defendant's Brief in Support of Motion to Dismiss Plaintiff's Second Amended Complaint ("Defendant's Brief"). Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's [Second] Amended Complaint was filed April 23, 2012 ("Plaintiff's Memorandum").

discrimination by employees of defendant PPL Corporation in violation of federal and Pennsylvania state law. For the reasons expressed in this Opinion, I grant, in part, and deny, in part, Defendant's Motion to Dismiss.

Specifically, I grant Defendant's Motion to Dismiss to the extent that it seeks to dismiss plaintiff's hostile work environment sexual harassment claim against defendant.

However, I deny Defendant's Motion to Dismiss to the extent that it seeks to dismiss plaintiff's retaliation claim against defendant.

Finally, at plaintiff's request, plaintiff's age discrimination claim against defendant is withdrawn. Accordingly, I dismiss Defendant's Motion to Dismiss as moot to the extent that it seeks to dismiss plaintiff's age discrimination claim.

## JURISDICTION

This court has original jurisdiction over the subject matter of this action based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331. This court has supplemental jurisdiction over plaintiff's Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1) because the sole defendant resides in this district.

## PROCEDURAL HISTORY

Plaintiff Lori Hallman filed her employment-discrimination Complaint in the Court of Common Pleas of Lehigh County, Pennsylvania, on February 25, 2011. Defendant PPL Corporation was served with the Complaint on April 11, 2011.

Defendant filed its Notice of Removal in this court on April 28, 2011. On May 5, 2011, defendant filed a motion which sought to dismiss plaintiff's initial Complaint.

On June 13, 2011, in response to defendant's initial motion to dismiss, plaintiff filed her Amended Complaint.

On July 5, 2012 defendant filed a motion which sought to dismiss plaintiff's Amended Complaint.

On July 25, 2011, in response to defendant's motion seeking to dismiss the Amended Complaint, plaintiff filed a motion which sought to leave to further amend her pleading. On August 10, 2011, defendant filed its opposition to plaintiff's request for leave to further amend her Amended Complaint.

By Order dated February 22, 2012, I granted plaintiff's request for leave to further amend her pleading and provided plaintiff until March 15, 2012 to file a Second Amended Complaint.

Plaintiff filed her Second Amended Complaint on March 13, 2012. On April 2, 2012, defendant filed the motion to dismiss the Second Amended Complaint which is presently before the court. Plaintiff filed its memorandum in opposition to the within motion on April 23, 2012. Hence this Opinion.

## Second Amended Complaint

The Second Amended Complaint contains four separate counts: Count I -- "Illegal Retaliation in Violation of Title VII and the Pennsylvania Human Relations Act" (paragraphs 80-84); Count II -- "Violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. Section 621, et seq." (paragraphs 85-90); Count III -- "Violation of Title VII of the Federal Civil Rights Act of 1991, 42 U.S.C. § 2000(e)" (paragraphs 91-96); and Count IV -- "Violation of the Pennsylvania Human Relations Act, 43 P.S. Section 951, et seq." (paragraphs 97-100).[2]

## STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record, including other judicial proceedings. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil

---

[2]     Plaintiff's Memorandum at page 3.  In her response to the Motion to Dismiss, plaintiff explains that she "has lodged three counts of employment discrimination against the Defendant, charging PPL with Title VII violations, ADEA violations, and PHRA violations." Id.

Procedure 9, a complaint is sufficient if it complies with
Rule 8(a)(2), which requires "a short and plain statement of the
claim showing that the pleader is entitled to relief". Rule
8(a)(2) does not require heightened fact pleading of specifics,
but only enough facts to state a claim to relief that is
plausible on its face. <u>Twombly</u>, 550 U.S. at 570,
127 S.Ct. at 1974, 167 L.Ed.2d at 949.[3]

   In determining whether a complaint is sufficient, the
court must accept all factual allegations as true, construe the
complaint in the light most favorable to the plaintiff, and
determine whether, under any reasonable reading, the plaintiff
may be entitled to relief. <u>Fowler</u>, 578 F.3d at 210 (citing
<u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir.
2008)).

   Although "conclusory" or "bare-bones allegations" will
not survive a motion to dismiss, <u>Fowler</u>, 578 F.3d at 210, a
complaint may not be dismissed merely because it appears unlikely
that the plaintiff can prove those facts or will ultimately
prevail on the merits. <u>Phillips</u>, 515 F.3d at 231. Nonetheless,
to survive a Rule 12(b)(6) motion, the complaint must provide
"enough facts to raise a reasonable expectation that discovery

---

[3]    The Supreme Court's Opinion in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 684,
129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the
"facial plausibility" pleading standard set forth in <u>Twombly</u> applies to all
civil suits in the federal courts. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203,
210 (3d Cir. 2009). This showing of facial plausibility then "allows the
court to draw the reasonable inference that the defendant is liable for the
misconduct alleged," and that plaintiff is entitled to relief. <u>Fowler</u>,
578 F.3d at 210 (quoting <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. at 1949,
173 L.Ed.2d at 884).

will reveal evidence of the necessary element." Id. at 234
(quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d
at 940) (internal quotations omitted).

The court is required to conduct a two-part analysis
when considering a Rule 12(b)(6) motion. First, the factual
matters averred in the complaint, and any attached exhibits,
should be separated from legal conclusions asserted. Fowler,
578 F.3d at 210. Any facts pled must be taken as true, and any
legal conclusions asserted may be disregarded. Id. at 210-211.

Second, the court must determine whether those factual
matters averred are sufficient to show that the plaintiff has a
"plausible claim for relief." Id. at 211 (quoting Iqbal,
556 U.S. at 679, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-
specific" and requires the court to draw on "its judicial
experience and common sense" to determine if the facts pled in
the complaint have "nudged [plaintiff's] claims" over the line
from "[merely] conceivable [or possible] to plausible." Iqbal,
556 U.S. at 679-680, 129 S.Ct. at 1949-1951, 178 L.Ed.2d at 884-
885.

A well-pled complaint may not be dismissed simply
because "it strikes a savvy judge that actual proof of those
facts is improbable, and that a recovery is very remote and
unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965,
167 L.Ed.2d at 940-941.

## FACTS

Based upon the averments in the Second Amended
Complaint, which I must accept as true for purposes of this
Opinion under the applicable standard of review discussed above,
and the exhibits to the Second Amended Complaint, the pertinent
facts are as follows.

Plaintiff Lori Hallman began working for defendant PPL
Corporation in May, 1978 as a Plant Equipment Operator.
Ms. Hallman presently works as a Plant Equipment Operator at
PPL's Martin Creek Power Plant and has been employed by PPL for
more than three decades.[4]  Ms. Hallman has not been forced to
resign from her position with PPL, and her employment has not
been terminated by PPL.[5]

### Keith Lobach

In 2007, Keith Lobach was Ms. Hallman's supervisor.
Mr. Lobach in turn reported to Peter Giella.[6]  At some later
date, Ms. Hallman began to work under a different supervisor,
Bill Paul.[7]

Mr. Lobach referred to his sister-in-law as a "whore"
and then told Ms. Hallman that Ms. Hallman "had been with a lot

---

[4]     Second Amended Complaint ¶¶ 3-5 and 34.

[5]     See Id. at ¶ 35.

[6]     Id. at ¶ 6.

[7]     Id. at ¶ 41.

of men".[8]  Ms. Hallman complained to someone (apparently, to

Mr. Giella)[9] that Mr. Lobach was sexually harassing her.[10]

"[M]any adverse consequences" arose after Ms. Hallman

complained about Mr. Lobach's conduct toward her.[11]  Specifi-

cally, Mr. Lobach began investigating the amount of time that

Ms. Hallman spent in the women's locker room.[12]  Mr. Lobach also

tried, unsuccessfully, to "trap [Ms. Hallman] in with a safety

violation".[13]

In February 2008, Ms. Hallman was given her job

performance review for the year 2007.[14]  Ms. Hallman's 2007

review contained several negative assessments, to which

---

[8]     Second Amended Complaint at ¶ 8.  The exact language of paragraph 8 of
the Second Amended Complaint is "Lobach told Plaintiff that she had been with
a lot of men after he just referred to his former sister-in-law as a 'wh*re'."
Throughout this Opinion, I interpret "wh*re" to mean "whore".

        The use of the pronoun "she" in paragraph 8 is ambiguous.  It could
refer to either plaintiff, or Mr. Lobach's former sister-in-law, as the person
who "had been with a lot of men" (thereby implying that "she" was a "whore").
For two reasons, I resolve the ambiguity by concluding that "she" refers to
plaintiff Hallman.

        First, the word "she" is in closer proximity to the word "Plaintiff"
("she" is the second word after "Plaintiff") than it is to the word "sister-
in-law" ("sister-in-law" is the seventeenth word after "Plaintiff").

        Second, by interpreting "she" to mean plaintiff Hallman, I am
interpreting the word in the light most favorable to plaintiff, as I am
required to do by the foregoing standard of review, because plaintiff's claim
of sexual harassment is stronger if her supervisor was inferring that
plaintiff was a whore, than if he was inferring that his former sister-in-law
was a whore.

[9]     Id. at ¶ 16

[10]    Id. at ¶ 7.

[11]    Id. at ¶ 9.

[12]    Id. at ¶ 10.

[13]    Id. at ¶ 11.

[14]    Id. at ¶ 12.

Ms. Hallman submitted a lengthy written response asserting that Mr. Lobach's negative comments in her 2007 review were in response to Ms. Hallman's prior complaints about sexual harassment by Mr. Lobach.

After Ms. Hallman complained to Mr. Giella about sexual harasssment by Mr. Lobach and no action was taken by Mr. Giella, plaintiff filed a claim of sexual harassment with PPL's Human Resources department.[15]

At some time (unspecified in the Second Amended Complaint), Mr. Lobach started a rumor (the substance of which also unspecified) about Ms. Hallman and her husband, who is also employed by PPL.[16]

In 2007 another PPL employee submitted a complaint about Mr. Lobach to PPL's Human Resources and accused Mr. Lobach of making racist remarks to the employee.[17] When Mr. Lobach learned about this allegation, he became "extremely irate".[18] Ms. Hallman's husband witnessed Mr. Lobach's reaction to the fact that he had been reported to Human Resources for making racist remarks.[19]

---

[15]     Second Amended Complaint at ¶ 16.  The Second Amended Complaint does not specify whether or not Ms. Hallman submitted her sexual harassment complaint to Human Resources before or after she received her 2007 performance review in February 2008.

[16]     Id. at ¶¶ 26-27.

[17]     Id. at ¶ 47.

[18]     Id.

[19]     Id.

## Denise Galiszewski and Anna Ferrao

Denise Galiszewski and Anna Ferrao are sisters who are employees of PPL.  At some time, Mr. Lobach directed Ms. Galiszewski and Ms. Ferrao to gather information about, and to harass, Ms. Hallman.[20]

Ms. Hallman submitted a complaint to PPL's Human Resources department[21] in the hopes that Ms. Galiszewski and Ms. Ferrao would stop their harassment.

PPL's Human Resources assured Ms. Hallman that the harassment would stop, but it did not stop.[22]  Ms. Hallman brought these concerns to Mr. Giella, and Mr. Giella told Ms. Hallman that it was simply her word against the word of Ms. Galiszewski and Ms. Ferrao.[23]

Ms. Hallman wrote two letters to Mr. Giella explaining what Ms. Galiszewski and Ms. Ferrao were doing to harass her[24]: Ms. Galiszewski knocked Ms. Hallman's glasses off of the table in the women's locker room, verbally berated Ms. Hallman, and was prepared to strike Ms. Hallman.[25]  When Ms. Hallman used PPL's bathroom, Ms. Ferrao would often follow Ms. Hallman into the

---

[20]    Second Amended Complaint at ¶¶ 18-19.

[21]    Id. at ¶ 20.

[22]    Id. at ¶ 21.

[23]    Id. at ¶ 22.

[24]    Id. at ¶ 23.

[25]    Id. at ¶¶ 24-25.

bathroom area in an effort by to continually harass Ms. Hallman.[26]

Someone from PPL's Human Resources Department told Ms. Hallman that an investigation would be initiated to look into her harassment allegations.[27]  Human Resources "kept postponing the investigation."[28]

When Human Resources actually conducted the investigation (at some unspecified time), only one person was interviewed concerning Ms. Hallman's allegations, and the person who was interviewed was reluctant to give any information.[29] Human Resources did not interview other (unidentified) individuals who potentially had information concerning Ms. Hallman's allegations because those individuals were "not known to be as easily intimidated" as the one person who was identified.[30]

Ms. Galiszewski is not required to report to work at PPL on a timely basis.[31]  Ms. Galiszewski rarely works five days a week, but she is permitted to come in early to work overtime which permits her greater exposure to Ms. Hallman.[32]

---

[26]    Second Amended Complaint at ¶¶ 70-71.

[27]    Id. at ¶ 28.

[28]    Id. at ¶ 29.

[29]    Id. at ¶ 30.

[30]    Id. at ¶ 31.

[31]    Id. at ¶ 68.

[32]    Id. at ¶¶ 68 and 69.

## September and October 2008

On September 19, 2008, Donald P. Russo, Esquire, counsel for Ms. Hallman, sent a letter to Andrew K. Williams, Esquire, an in-house attorney employed by PPL.[33] In this September 19, 2008 letter, plaintiff's counsel refers to the "serious situation" of "job harassment and bullying" which Ms. Hallman was suffering at the hands of Ms. Galiszewski and Ms. Ferrao.[34] The letter also states that Ms. Hallman "ha[d] been threatened directly by these two women."[35]

Plaintiff's counsel indicated his belief that PPL's Human Resources and the management of its Martin's Creek Power Plant were aware of the problems between Ms. Martin and Ms. Galiszewski and Ms. Ferrao.[36] Plaintiff's counsel requested PPL to discipline Ms. Galiszewski and Ms. Ferrao severely or terminate their employment.[37]

On October 1, 2008, Sean M. Hart, Esquire, an in-house attorney for PPL, sent a letter in response to Attorney Russo. Attorney Hart's stated, in pertinent part:

> Please be advised that both Human Resources and Management were aware of the personal animosity that exists between the parties[-- Ms. Martin, and Ms. Galiszewski and Ms. Ferrao --]prior to your letter and actually met with the parties on

---

[33]   Second Amended Complaint at ¶¶ 48-49, and Exhibit A.

[34]   Id., Exhibit A.

[35]   Id., Exhibit A.

[36]   Id., Exhibit A.

[37]   Id., Exhibit A.

September 15, 2008 in an attempt to resolve this dispute.  As a result, the Company has reprimanded Denise Gaslawski and will change her work hours to ensure that she and Ms. Hallman will have no occasion to interact in the workplace.  Please be advised that contrary to the allegations in your letter, *the Company's investigation revealed that the behavior was the result of personal animus and was not the result of of any intent to discriminate against your client[, Ms. Hallman,] based upon any protected class*.[38]

## February 2010

Plaintiff filed charge number 530-2010-01399 with the United States Equal Employment Opportunity Commission ("EEOC") on February 24, 2010.  The charge was filed jointly with the Pennsylvania Human Relations Commission ("PHRC").

## March and April 2011

In March 2011 Ms. Hallman noticed that there was a cot with bedding set up for sleeping in the women's locker room at the Martin's Creek Power Plan.  Ms. Hallman reported the cot and bedding to her supervisors.[39]

On April 1, 2011 plaintiff saw the word "bitch" written on her locker.[40]

When Ms. Hallman returned to work after a few days off, she informed Mr. Paul and Mr. Giella about what was written on her locker.[41]  Mr. Giella told her that she should report such

---

[38]    Second Amended Complaint, Exhibit B (emphasis added).

[39]    Id. at ¶ 59.

[40]    Id. at ¶ 60.

[41]    Id. at ¶ 61.

things immediately.[42]  Although Mr. Giella and Mr. Paul "are aware of who defaced" the locker, Mr. Giella told Ms. Hallman that he did not know who had defaced her locker.[43]  Mr. Giella also told her that she should avoid Ms. Galiszewski and Ms. Ferrao as much as possible.[44]

### January 2012

On January 5, 2012 Ms. Hallman drove her husband's truck to work so that her husband could use her car.  Ms. Hallman used a spare set of keys to her husband's truck and did not use her own set of car keys.[45]

After arriving in the women's locker room on January 5, 2012, Ms. Hallman hung up her coat and put the keys to her husband's truck in her left coat pocket.  She used her own set of keys to access her locker and then placed her set of keys in her lunch bag, which she keeps with her while on the job.[46]

At the end of her shift on January 5, 2012, Ms. Hallman was in the locker room changing and preparing to leave for the night when she noticed that the truck keys were no longer in her coat pocket.  After searching her other belongings and the locker

---

[42]    Second Amended Complaint at ¶ 62.

[43]    Id. at ¶ 64.

[44]    Id. at ¶ 66

[45]    Id. at ¶ 38.

[46]    Id. at ¶ 39.

room unsuccessfully, Ms. Hallman could not locate the keys and got a ride home from a friend.[47]

The following day, Ms. Hallman retraced her steps in search of the missing truck keys but, again, was unable to locate them. Bill Paul -- who was, by that time, Ms. Hallman's supervisor -- asked Ms. Hallman if she was having a "locker room problem[]".[48] Ms. Hallman responded affirmatively and Mr. Paul told Ms. Hallman not to worry and that her problem would not continue "much longer".[49] Mr. Paul was referring to the fact that Ms. Galiszewski and Ms. Ferrao would only be working at the same location as Ms. Hallman for "a week or so".[50]

Bill Paul wrote a report concerning this incident and sent it to his supervisor Dale Miller, and to Mr. Giella, who was the plant manager at that time.[51] Mr. Paul told Mr. Miller that he believed that Ms. Galiszewski's and Ms. Ferrao's treatment of Ms. Hallman would become worse when the two women learned that they would no longer be working at the same location as Ms. Hallman.[52] Mr. Paul told plaintiff that he did not think he

---

[47]    Second Amended Complaint at ¶ 40.

[48]    Id. ¶ 41.

[49]    Id. at ¶ 41.

[50]    Id. at ¶ 41.

[51]    Id. at ¶ 42.

[52]    Id. at ¶ 42.

would hear anything from Mr. Miller or Mr. Giella in response to the report he had sent to them.[53]

### Defendant's Contentions

Defendant PPL Corporation contends that plaintiff's Second Amended Complaint does not aver sufficient facts to state a claim against PPL for retaliation in violation of Title VII and the Pennsylvania Human Relations Act.

PPL contends that plaintiff has not stated a retaliation claim because she has not sufficiently pled that adverse action was taken following her complaint about sexual harassment by Mr. Lobach. Specifically, PPL contends that the only action taken by PPL against plaintiff which might be considered "adverse" was the issuance, in February 2008, of plaintiff's performance review for the year 2007 which "contained certain negative assessments".[54]

PPL further contends that plaintiff has not sufficiently alleged that she engaged in protected activity prior to the allegedly retaliatory conduct by PPL.[55] Specifically, PPL contends that plaintiff's retaliation claim fails because plaintiff does not allege that she made informal complaints to PPL management about Lobach's sexual harassment, but simply

---

[53]    Second Amended Complaint at ¶ 43.

[54]    Defendant's Brief at page 11 (quoting Second Amended Complaint at ¶¶ 13-14).

[55]    Defendant's Brief at page 11 (citing Second Amended Complaint at ¶ 17).

alleges that "[t]he Plaintiff had complained that she was being sexually harassed by Lobach."[56]

PPL contends that, to the extent plaintiff is relying on her complaints to PPL concerning the conduct of Ms. Galis-zewski and Ms. Ferrao to support her retaliation claim, such a retaliation claim must fail because plaintiff's complaints about the conduct of those two women does not constitute protected activity under Title VII.[57]

PPL contends that, to the extent that plaintiff has attempted to assert a sex discrimination claim based upon a hostile work environment, her Second Amended Complaint fails to state such a claim. Specifically, PPL contends that plaintiff fails to state a claim for sexual harassment based upon hostile work environment claim because her Second Amended Complaint does not aver facts which support a plausible inference that either Ms. Galiszewski or Ms. Ferrao sexually desired plaintiff; that either woman expressed general hostility toward women in the workplace; or that either woman took any action, or made any remark, toward plaintiff based upon plaintiff's failure to comply with female gender stereotypes; and because the Second Amended Complaint references only an isolated statement by Mr. Lobach.[58]

---

[56]    Second Amended Complaint at ¶ 17.

[57]    Defendant's Brief at page 12.

[58]    Defendant's Brief at pages 14-17.

Finally, PPL contends that plaintiff fails to state any claim for age discrimination in violation of the ADEA or the PHRA.[59]

Plaintiff's Contentions

Plaintiff begins her argument in opposition to defendant's Motion to Dismiss by stating: "The Plaintiff has lodged three counts of employment discrimination against the Defendant, charging PPL with Title VII violations, ADEA violations, and PHRA violations."[60]

The PHRA is interpreted coextensively with federal discrimination statutes. See Burton v. Teleflex Incorporated, ___ F.3d ___, ___, 2013 WL 616973, at *11 (3d Cir. 2013). More specifically, in Atkinson v. LaFayette College, 460 F.3d 447, 454 n.6 (3d Cir. 2006), the United States Court of Appeals for the Third Circuit stated that "[c]laims under the PHRA are interpreted coextensively with Title VII claims."

Plaintiff does not assert any PHRA claims which she contends are not within the scope of her Title VII and ADEA claims. Therefore, I will not separately address her PHRA claims in this Opinion.

Moreover, Plaintiff's Memorandum states that "the Plaintiff will voluntarily withdraw her age discrimination claim

---

[59]    Defendant's Brief at pages 17-19.

[60]    Plaintiff's Memorandum at page 3.

under the ADEA and PHRA".[61]  Accordingly, I consider defendant's challenge to plaintiff's sex discrimination claims coextensively under Title VII and the PHRA, but not under the ADEA.

Plaintiff contends that she has sufficiently pled a claim for sexual harassment in violation of Title VII and the PHRA based upon a hostile-work-environment theory.  Specifically, plaintiff contends that her case "mirror[s]" the case of <u>Brown-Baumbach v. B&B Automotive, Inc.</u>, 437 Fed.Appx. 129 (3d Cir. 2011), and that she "was subjected to offensive banter and inappropriate conduct on a regular basis" which was "severe" and "traceable to an official sexual harassment complaint".[62]

Plaintiff further contends that she has sufficiently pled a claim for retaliation in violation of Title VII and the PHRA.  Plaintiff asserts that "[c]learly, all times relevant, the Plaintiff was engaged in 'protected activity'" and that her Second Amended Complaint describes "the retaliation that she has endured, on an ongoing basis, ever since she filed a sexual harassment complaint internally with the company in 2007".[63] Plaintiff further asserts that she "has averred specific job actions taken against her due to this ongoing pattern of

---

[61]    Plaintiff's Memorandum at page 10.

[62]    Although the name of the individual against whom plaintiff filed this "official sexual harassment complaint" is not provided in Plaintiff's Memorandum, the only complaint of sexual harassment referenced by plaintiff in her Second Amended Complaint is her complaint of sexual harassment by Keith Lobach made some time prior to February 2008 (the time when the allegedly-retaliatory performance review was issued to plaintiff).  (<u>See</u> Second Amended Complaint at ¶¶ 7 and 13.)

[63]    Plaintiff's Memorandum at page 9.

- 19 -

harassment and retaliation arising from her complaining about
being the victim of sexual harassment."[64]

## **DISCUSSION**

## **Retaliation**

Title VII makes it unlawful for an employer to
retaliate against an employee for opposing the employer's
discriminatory conduct or for bringing or supporting an action
arising from the employer's discriminatory conduct.  42 U.S.C.
§ 2000e-3(a).[65]

In order to state a prima facie claim for retaliation,
an employee-plaintiff must plead sufficient factual matter to

---

[64]     Plaintiff's Memorandum at page 9.

Plaintiff's counsel begins his argument in support of plaintiff's Title VII claims by noting that defendant is "faced with a Second Amended Complaint that is one hundred (100) paragraphs long". (Plaintiff's Memorandum at page 4.)  Although plaintiff's counsel has correctly tallied the number of paragraphs included in his most recent version of the complaint, he did not see fit to include in his brief a citation to a single one of those one hundred paragraphs as factual support for any of plaintiff's contentions quoted in this section of the Opinion.

It bears noting that, under the foregoing standard of review, the court considers the substance (rather than the sheer volume) of the factual averments contained in a plaintiff's pleading and the plausible inferences that can be drawn from those factual averments in determining whether a plaintiff has stated a claim upon which relief may be granted.

[65]     Section 2000e-3(a) provides that

> [i]t shall be an unlawful employment practice for an employer to
> discriminate against any of his employees or applicants for
> employment, for an employment agency, or joint labor-management
> committee controlling apprenticeship or other training or
> retraining, including on-the-job training programs, to
> discriminate against any individual, or for a labor organization
> to discriminate against any member thereof or applicant for
> membership, *because he has opposed any practice made an unlawful
> employment practice by this subchapter, or because he has made a
> charge, testified, assisted, or participated in any manner in an
> investigation, proceeding, or hearing under this subchapter.*

42 U.S.C. § 2000e-3(a)(emphasis added).

support a plausible inference that "(1) the employee engaged in a protected employee activity; (2) the employer took adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Farrell v. Planters Lifesavers Company, 206 F.3d 271, 279 (3d Cir. 2000), quoted in Brown-Baumbach v. B & B Automotive, Inc., 437 Fed.Appx. 129, 135 (3d Cir. 2011).

Section 2000e-3(a) provides a non-exhaustive list of examples of protected activity in which an employee might engage in repsonse to the types of discrimination proscribed by Title VII: "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

As the United States Court of Appeals for the Third Circuit has stated, "Title VII's anti-retaliation provisions protect employees who participate in Title VII's statutory processes *or who otherwise oppose employment practices made illegal by Title VII*." Curay-Cramer v. The Ursiline Academy of Wilmington, Delaware, Inc., 450 F.3d 130, 134 (3d Cir. 2006)(citing Laughlin v. Metropolitan Washington Airports Authority, 149 F.3d 253, 259-260 (4th Cir. 1998))(emphasis added).

Title VII makes it illegal for an employer to, among other things, "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of

employment, because of such individual's...sex".  42 U.S.C.
§ 2000e-2(a)(1).  Accordingly, section 2000e-3(a) provides that a
person has engaged in Title VII-protected activity when that
person opposes gender discrimination.  See Barber v. CSX
Distribution Services, 68 F.3d 694, 702 (3d Cir. 1995).[66]

An adverse action, for purposes of a Title VII
retaliation claim, means that "a reasonable employee would have
found the challenged action materially adverse, which...means it
well might have dissuaded a reasonable worker from making or
supporting a charge of discrimination." Burlington Northern &
Santa Fe Railway Company v. White, 548 U.S. 53, 68,
126 S.Ct. 2405, 165 L. Ed. 2d 345 (2006).

"The element of causation, which necessarily involves
an inquiry into the motives of the employer, is highly
context-specific." Kachmar v. Sungard Data Systems,
109 F.3d 173, 178 (3d Cir. 1997).

Plaintiffs can demonstrate the requisite causal
connection by showing temporal proximity between the Title VII
protected activity and the adverse action.  Merit v. SEPTA,
315 F.Supp.2d 689, 707 (E.D.Pa. 2004)(Rufe, J.)(citing Clark
County School District v. Breeden, 532 U.S. 268, 273,
149 L.Ed.2d 509, 121 S.Ct. 1508 (2001)).  However,"the timing of
the allegedly retaliatory action must be 'very close' or

---

[66]     Although Barber involved age discrimination claims, the Third Circuit
has explained that the analytical framework used for addressing retaliation
claims under Title VII is the same as is applied under the ADEA and the PHRA.
See Slagle v. County of Clarion, 435 F.3d 262, 265 (3d Cir. 2006).

'unusually suggestive' of retaliatory motive before a causal link will be inferred."  Id. (quoting Breeden, supra).

Sexual harassment of a female employee by her male supervisor is prohibited by Title VII, and defendant does not contend otherwise.  According to plaintiff's Second Amended Complaint,  Keith Lobach referred to his former sister-in-law as a "whore" and then told plaintiff that plaintiff had "been with a lot of men".[67]  Drawing all reasonable inferences in favor of the plaintiff, as I am required to do under the above standard of review, Keith Lobach's statement implicitly accused plaintiff of being a whore who slept with a lot of men.

## Adverse Action

Following the derogatory accusation just described,[68] plaintiff "complained that she was being sexually harassed by [Mr.] Lobach."[69]  Plaintiff "presented her concern to [Mr.] Giella", and then "filed sexual harassment charges with [H]uman Resources" when Mr. Giella took no action in response to her complaint about Mr. Lobach.[70]  The Second Amended Complaint does

---

[67]    Second Amended Complaint at ¶ 8.

[68]    It is not clear from the Second Amended Complaint that Mr. Lobach made the comment concerning his former sister-in-law prior to plaintiff's complaint that she was being sexually harassed by Mr. Lobach.  (See id. at ¶¶ 6-16.) However, that is one reasonable interpretation of the Second Amended Complaint.  (See id. at ¶¶ 7 and 16.)

It is also the interpretation which is in the light most favorable to plaintiff, as required by the applicable standard of review, because plaintiff's formal complaint of sexual harassment is stronger if it included the allegation that her supervisor implicitly accused her of being a whore who slept with a lot of men, than if she did not include that allegation.

[69]    Id. at ¶ 7.

[70]    Id. at ¶ 16.

not specify when plaintiff made this complaint about Mr. Lobach, but it can be reasonably inferred that plaintiff made this complaint to PPL's Human Resources department or to management in 2007 (prior to her February 2008 performance review containing "certain negative comments" from Mr. Lobach).[71]

Defendant PPL contends that the only action taken against plaintiff which might be considered "adverse" was the issuance, in February 2008, of plaintiff's performance review for the year 2007 which "contained certain negative assessments".[72]

Plaintiff alleges in her Second Amended Complaint that, after she complained about sexual harassment by Mr. Lobach, Mr. Lobach (1) inserted "certain negative comments" into plaintiff's performance evaluation for the year 2007; (2) "tried to trap her in with a safety violation"; (3) "began investigating the amount of time the Plaintiff spent in the women's locker room"; and (4) "directed [Ms.] Galiszewski and [Ms.] Ferrao to gather information on the Plaintiff and to harass her".[73]

In other words, plaintiff alleges that, after she made an in-house complaint of sexual harassment against her supervisor, that supervisor included unwarranted negative remarks in her official performance review, sought to cite her with a

---

[71]    Plaintiff refers to this complaint as "an official sexual harassment complaint" which was "filed...internally with the company in 2007." (Plaintiff's Memorandum at pages 8-9.)

[72]    Defendant's Brief at page 11 (quoting Second Amended Complaint at ¶¶ 13-14).

[73]    Second Amended Complaint at ¶¶ 9-11, 13-15, and 19.

- 24 -

meritless safety violation, and directed other subordinates to collect information about, and to harass, plaintiff.

Taking these as true, as I am required to be by the standard of review explained above, I conclude that plaintiff has alleged sufficient adverse action to state a Title VII retaliation claim, and I reject defendant's contrary assertion. In short, the actions which Mr. Lobach allegedly took against Ms. Hallman "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Railway Company v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L. Ed. 2d 345 (2006). Accordingly, I deny defendant's motion to the extent it seeks to dismiss plaintiff's retaliation claim based upon a failure to sufficiently plead adverse action.

### Protected Activity

PPL contends that plaintiff's retaliation claim fails because plaintiff does not allege that she made informal complaints to PPL management about Lobach's sexual harassment, but simply alleges that "[t]he Plaintiff had complained that she was being sexually harassed by Lobach."[74]

"A general complaint of unfair treatment is insufficient to establish protected activity under Title VII." Curay-Cramer, 450 F.3d at 135. The Third Circuit Appeals Court has "held that a letter to an employer's Human Resources Depart-

---

[74]     Second Amended Complaint at ¶ 17.

ment was not protected activity because it did not specifically complain about [sex] discrimination...[but rather] stated that the plaintiff felt that the position was given to a less qualified person...[and] neither 'explicitly or implicitly' alleged that a protected characteristic" was the basis for the letter-complaint.  Id.

Here, plaintiff avers that she: (1) "had complained that she was being sexually harassed by [Mr.] Lobach;[75]; (2) "had...filed sexual harassment charges with [H]uman Resources";[76] (3) "filed a sexual harassment complaint against [Mr. Lobach] in 2007";[77] and (4) "brought...[a] sexual harassment charge against [Mr.] Lobach".[78]  The averments in plaintiff's Second Amended Complaint support a reasonable inference that she filed a sexual harassment complaint with defendant's human resources department in 2007.  Accordingly, she has sufficiently alleged her engagement in Title VII protected activity. Therefore, I deny defendant's within motion to dismiss to the extend it is based on plaintiff's failure to plead Title VII protected activity.

The Third Circuit has stated that "[a] general complaint of unfair treatment does not translate into a charge of illegal [sex] discrimination" for purposes of determining whether

---

[75]    Second Amended Complaint at ¶ 7.

[76]    Id. at ¶ 16.

[77]    Id. at ¶ 47.

[78]    Id. at ¶ 82.

a plaintiff has engaged in protected opposing conduct.  Barber,
68 F.3d at 702.  Instead, the message conveyed by an employee in
his or her purportedly-protected activity must "explicitly or
implicitly allege that [gender] was the reason for" the actions
(here, sexual harassment) complained of by the employee.  Id.

Plaintiff attached, as Exhibit A to her Second Amended
Complaint, a letter dated September 19, 2008 from her counsel
Donald P. Russo, Esquire, to Andrew K. Williams, Esquire, an in-
house attorney for PPL Services Corporation.  In the letter,
Attorney Russo states that Ms. Hallman "has been experiencing on
the job harassment and bullying at the hands of two fellow
employees, Ms. Anna Ferrao and Ms. Denise [Galiszew-ski]."
Attorney Russo requested that Ms. Galiszewski and Ms. Ferrao be
"disciplined immediately" and stated that "severe discipline is
necessary, up to and including termination".[79]

The September 19, 2008 letter does not explicitly
state, or implicitly suggest, that the "harassment and bullying"
that plaintiff was allegedly suffering at the hands of her two
female co-workers was in any way sexual in nature or based upon
plaintiff's gender.  Accordingly, I conclude that, although
plaintiff has sufficiently alleged that she engaged in Title VII
protected activity by submitting a sexual harassment complaint
against Mr. Lobach in at some time in 2007, the September 19,
2008 letter from Attorney Russo does not constitute Title VII

---

[79]    Second Amended Complaint, Exhibit B at page 1.

protected activity because it was a general complaint about
treatment by co-workers, and did not specifically complain about
gender discrimination or sexual harassment.  <u>Curay-Cramer</u>,
450 F.3d at 135.

## **<u>Hostile Work Environment</u>**

Defendant PPL contends that plaintiff fails to state a
claim for sexual harassment based upon a hostile-work-environment
theory because her Second Amended Complaint does not aver facts
which support a plausible inference that (1) either
Ms. Galiszewski or Ms. Ferrao sexually desired plaintiff;
(2) that either woman expressed general hostility toward women in
the workplace; (3) that either woman took any action, or made any
remark, toward plaintiff based upon plaintiff's failure to comply
with female gender stereotypes; and (4) because the Second
Amended Complaint refers only to an isolated statement by
Mr. Lobach.[80]

Plaintiff contends that she has sufficiently pled a
claim for sexual harassment in violation of Title VII and the
PHRA based upon a hostile-work-environment theory.  Specifically,
plaintiff contends that her case "mirror[s]" the case of <u>Brown-
Baumbach v. B&B Automotive, Inc.</u>, 437 Fed.Appx. 129 (3d Cir.
2011), and that she "was subjected to offensive banter and

---

[80]     Defendant's Brief at pages 14-17.

inappropriate conduct on a regular basis" which was "severe" and "traceable to an official sexual harassment complaint".[81]

In order for a female employee to state a hostile work environment claim under Title VII, the employee-plaintiff must plead sufficient factual matter to support a plausible inference that (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the employee; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability.  Brown-Baumbach v. B&B Automotive, Inc., 437 Fed.Appx. 129, 132-133 (3d Cir. 2011)(citing Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001); see Pennsylvania State Police v. Suders, 542 U.S. 129, 133, 124 S. Ct. 2342, 2347, 159 L. Ed. 2d 204, 211 (2004)(citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

The court must consider the totality of the circumstances in assessing whether the evidence presented -- or, at the motion-to-dismiss stage, the facts alleged by the employee-plaintiff -- establish a hostile or abusive work environment. See Brown-Baumbach, 437 Fed.Appx. at 133.  In making this assessment, the court should consider

---

[81]    Although the name of the individual against whom plaintiff filed this "official sexual harassment complaint" is not provided in Plaintiff's Memorandum, the only complaint of sexual harassment referenced by plaintiff in her Second Amended Complaint is her complaint of sexual harassment by her supervisor Keith Lobach, made some time prior to February 2008 (the time when the allegedly-retaliatory performance review was issued to plaintiff). (See Second Amended Complaint at ¶¶ 7 and 13.)

the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295, 302-303 (1993); see Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005).

The Supreme Court of the United States has stated that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)(internal quotations omitted).

Similarly, the Third Circuit Appeals Court has stated that "[t]he mere utterance of an epithet, joke, or inappropriate taunt that may cause offense does not sufficiently affect the conditions of employment to implicate Title VII liability." Weston, 251 F.3d at 428.

Count III of the plaintiff's Second Amended Complaint contains a reference to "sexual harassment and subsequent retaliation expressed by [Mr.] Lobach".[82] Count IV asserts, in a similarly passing fashion, that plaintiff "believes, and

---

therefore avers, that the conduct of the Defendant, as set forth at length hereinabove[,] was discriminated on the basis of her age, retaliation, and harassment."[83]  However, neither Count III, nor Count IV of the Second Amended Complaint specify which acts by defendant's employees created a hostile work environment based upon plaintiff's sex.

Unfortunately, Plaintiff's Memorandum does not explain how (or which of) the allegations in the Second Amended Complaint, when accepted as true, are sufficient to state a sexual harassment claim under a hostile work environment theory.

Instead of explaining how her own averments sufficiently state a sexual harassment claim, plaintiff simply asserts that her claims mirror those in Brown-Baumbach and proceeds to recount the facts in that case.[84]

The facts in Brown-Baumbach, as recounted by the Third Circuit, offer substantially more support for a sexual harassment hostile work environment claim than the facts averred by plaintiff here.  I will recount the facts presented by the Brown-Baumbach case because plaintiff asserts that the facts and claims here "mirror" that case.

Ms. Sandra Brown-Baumbach was employed as an assistant business manager responsible for loan financing at a used-car dealership located in a former gas station.  Brown-Baumbach,

---

[83]    Id. at ¶ 100.

[84]    Plaintiff's Memorandum at page 5.

437 Fed.Appx. at 130.  Ms. Brown-Baumbach asserted a sexual harassment claim based upon events which began during her fourth month of employment and which included "jokes with sexual overtones made about Ms. Brown-Baumbach"; "comments made in Ms. Brown-Baumbach's presence that had a sexual connotation"; "comments...[and] rumors about Ms. Brown-Baumbach of a sexual nature"; and "berating and insulting remarks directed at Ms. Brown-Baumbach and other women based upon their gender"; and "rude conduct by another female employee directed at Ms. Brown-Baumbach...based on Ms. Brown-Baumbach's gender."  Id. at 131.

By way of example of sexual jokes made at Ms. Brown-Baumbach's expense, when Ms. Brown-Baumbach spilled ice cream on her clothes, a male co-worker joked that he had made her so excited that she "creamed her pants".  Id.  Additionally, co-workers joked about Ms. Brown-Baumbach and her supervisor "getting busy".  Id.

By way of example of comments made to or around Ms. Brown-Baumbach, a male co-worker "talked dirty" to a female customer, invited that customer to go dancing, and told that customer that he "swung both ways."  Id.  Additionally, when Ms. Brown-Baumbach's cousin was scheduled to come in for a job interview, a supervisor told Ms. Brown-Baumbach that her cousin would automatically be hired if the cousin came to the job interview in high-heeled shoes and attractively dressed.  Id.

On another occasion, a stripper visited the dealership to purchase a car and Ms. Brown-Baumbach's supervisor told Ms.

Brown-Baumbach that "Heels really turn [him] on" and asked "What do you think she has in the trunk?"  Id.  Indeed, when the supervisor was helping the stripper remove some items from her old car, he lifted a pair of high-heeled shoes and said to Ms. Brown-Baumbach, "Sandy, look, these are what turn me on."  Id.

On another occasion, Ms. Brown-Baumbach's supervisor sent a text message to another employee asking if that employee thought that Ms. Brown-Baumbach was wearing underwear that day. Id. at 132.  On another occasion, an untrue rumor was circulated around the workplace that Ms. Brown-Baumbach and a co-worker were sleeping together.  Id.

Once, the owner of the used-car dealership called Ms. Brown-Baumbach a "mother f**king bitch", and, on another day, stated told the female employees at the dealership that "if any of [the] women shed a tear in his office, [they should] consider [themselves] automatically terminated."  Id.

In short, it is simply inaccurate to state that the facts averred in plaintiff's Second Amended Compaint "mirror" the facts presented in Brown-Baumbach.

In Brown-Baumbach, the Third Circuit Appeals Court reversed the district court's decision to grant summary judgment in favor of the used-car dealership on Ms. Brown-Baumbach's sexual harassment hostile work environment claim asserted under Title VII.  Id. at 130.  Although Brown-Baumbach was a summary judgment case and the Ms. Brown-Baumbach was required to (and did) provide record evidence supporting the facts underlying her

sexual harassment hostile work environment claim, the facts recounted by the Third Circuit in its Opinion are nonetheless instructive with respect to the sufficiency of the averments in plaintiff's Second Amended Complaint.

If plaintiff here had averred conduct by defendant's employees similar in severity <u>or</u> frequency to the conduct supported by record evidence in <u>Brown-Baumbach</u>, plaintiff would have sufficiently stated a sexual harassment hostile work environment claim. However, here, unlike in <u>Brown-Baumbach</u>, plaintiff has not averred facts demonstrating, or supporting a plausible inference of, similar sexually-charged, severely embarrassing, and/or aggressively belittling conduct on the part of her supervisors and co-workers.

Indeed, while plaintiff alleges that she filed a sexual harassment complaint against Mr. Lobach with PPL's Human Resources department, plaintiff does not state what Mr. Lobach did, what actions he took or what comments he made, that constituted the sexual harassment about which she filed that human resources complaint.

Moreover, while Plaintiff's Memorandum asserts that "[i]n the case at bar, the alleged conduct indeed was frequent, severe, [and] threatening" plaintiff does not refer to any particular conduct averred in the Second Amended Complaint in support of that her assertion.

For the reasons expressed above, I grant defendant's within motion and dismiss plaintiff's sexual harassment hostile work environment claim from the Second Amended Complaint.

**CONCLUSION**

For the above reasons, I grant, in part, and deny, in part, defendant's motion to dismiss plaintiff's Second Amended Complaint.

Specifically, I grant the motion to the extent that it seeks to dismiss plaintiff's sexual harassment hostile work environment claim asserted under both Title VII and the PHRA because plaintiff has not pled sufficient facts to state such a claim.

However, I deny the motion to the extend that it seeks to dismiss plaintiff's retaliation claim asserted under both Title VII and the PHRA based upon plaintiff's alleged failure to sufficiently plead facts establishing protected activity or adverse action by defendant. On the contrary, plaintiff has sufficiently pled both facts establishing protected activity and adverse action by defendant.

Finally, I grant plaintiff's request to withdraw her age discrimination claim from the Second Amended Complaint and, accordingly, dismiss the within motion as moot to the extent that it seeks to dismiss plaintiff's age discrimination claim.

Accordingly, the sole claim remaining in the Second Amended Complaint is plaintiff's retaliation claim asserted under Title VII and the PHRA.