IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LORI HALLMAN,                    )
                                 )
          Plaintiff              )    Civil Action
                                 )    No. 11-cv-02834
     v.                          )
                                 )
PPL CORPORATION,                 )
                                 )
          Defendant              )
                                 )

                    *      *      *

APPEARANCES:

          DONALD P. RUSSO, ESQUIRE
               On behalf of Plaintiff

          STEVEN E. HOFFMAN, ESQUIRE
          EDWARD J. EASTERLY, ESQUIRE
               On behalf of Defendant

                    *      *      *

JAMES KNOLL GARDNER
United States District Judge

                    **O P I N I O N**

          This matter is before the court on Defendant's Motion

for Summary Judgment filed August 30, 2013 (Document 35).[1]  For

---

[1]          Defendant's Motion for Summary Judgment was filed together with
Exhibit A, Parts 1 through 4 (Documents 35-2 through 35-5, respectively) to
defendant's motion, and Defendant's Brief in Support of Motion for Summary
Judgment (Document 35-6)("Defendant's Brief"). Defendant's Statement of
Material Undisputed Facts (Document 36)("DSOF") was also filed on August 30,
2013.

          On October 3, 2013, Plaintiff's Memorandum of Law in Opposition
to Defendant's Motion for Summary Judgment (Document 41)("Plaintiff's
Memorandum") was filed together with Plaintiff's Response to Defendant's

                              (Footnote 1 continued):

the reasons expressed below, I grant Defendant's Motion for
Summary Judgment and, accordingly, enter judgment in favor of
defendant PPL Corporation and against plaintiff Lori Hallman on
the sole remaining claim in the Second Amended Complaint filed
March 13, 2012 -- namely,  plaintiff's claim of retaliation in
violation of Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. §§ 2000(e)-2000(e)-17("Title VII"), and the
Pennsylvania Human Relations Act, Act of October 27, 1955,
P.L. 744, No. 222, §§ 1-13, as amended, 43 P.S. §§ 951-963
("PHRA").

     Specifically, I grant defendant's motion for summary
judgment on plaintiff's Title VII retaliation claim to the

---

(Continuation of footnote 1):

Statement of Undisputed Facts (Document 41-1)("PSOF") and plaintiff's
supporting materials (Documents 41-2 through 41-18, respectively).

     On October 10, 2013, with leave of court, Defendant's Reply Brief
(Document 44) was filed.

     To avoid confusion, I note that the docket entries reflect that
plaintiff filed her opposition to defendant's motion for summary judgment
twice -- on September 30, 2013 (Documents 39 through 39-19), as well as on
October 3, 2013 (Documents 41 through 41-18).  After the October 3, 2013
filing, counsel for plaintiff, Donald P. Russo, Esquire, informed my chambers
that the plaintiff's opposition had been re-filed on October 3, 2010 because
plaintiff's counsel uploaded the initial opposition papers to the court's
electronic case filing system upside-down on September 30, 2013.

     Nevertheless, plaintiff's opposition papers electronically filed
on October 3, 2013 were also uploaded upside-down.  Because plaintiff's
counsel submitted a courtesy copy of the purportedly-corrective October 3,
2013 documents, I cite those documents in this Opinion.

     Plaintiff did not re-file her proposed Order on October 3, 2013,
which accounts for the one-document discrepancy between the number of
documents filed on September 30, 2013 and October 3, 2013.

extent that the claim is based upon plaintiff's internal complaints of sexual harassment by her then-supervisor Keith Lobach made in 2007 because (1) those actions taken by Keith Lobach and complained of by plaintiff were not materially adverse actions; (2) plaintiff's claim with respect to actions by Keith Lobach in 2007 and early 2008 is time-barred; and (3) the record evidence does not permit a reasonable factfinder to conclude that the bullying and harassment of plaintiff by two sisters (who were also employed by defendant PPL) was causally connected to plaintiff's 2007 sexual harassment complaints against Keith Lobach.

Additionally, I grant defendant's motion for summary judgment on plaintiff's Title VII retaliation claim to the extent that the claim is based upon plaintiff's charge of discrimination filed with the United States Equal Employment Opportunity Commission ("EEOC") on February 24, 2010 because plaintiff has not provided record evidence which would permit a reasonable factfinder to conclude that she suffered any materially adverse action or treatment causally connected to her February 24, 2010 EEOC charge.

## JURISDICTION

This court has original jurisdiction over the subject matter of this employment discrimination action based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.

-3-

This court has supplemental jurisdiction over plaintiff's Pennsylvania state-law claim pursuant to 28 U.S.C. § 1367.

## VENUE

Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1), (c)(2) because the sole defendant resides in this district.

## PROCEDURAL HISTORY

Plaintiff Lori Hallman filed her employment-discrimination Complaint in the Court of Common Pleas of Lehigh County, Pennsylvania, on February 25, 2011.  Defendant PPL Corporation was served with the Complaint on April 11, 2011.

Defendant filed its Notice of Removal in this court on April 28, 2011.  On May 5, 2011, defendant filed a motion seeking to dismiss plaintiff's initial Complaint.

On June 13, 2011, in response to defendant's initial motion to dismiss, plaintiff filed an Amended Complaint.

On July 5, 2012 defendant filed a motion seeking to dismiss plaintiff's Amended Complaint.

On July 25, 2011, in response to defendant's motion seeking to dismiss the Amended Complaint, plaintiff filed a motion seeking leave to further amend her pleading.  On August 10, 2011, defendant filed its opposition to plaintiff's request for leave to further amend her Amended Complaint.

By Order dated February 22, 2012, I granted plaintiff's request for leave to further amend her pleading and provided plaintiff until March 15, 2012 to file a Second Amended Complaint.

Plaintiff filed her Second Amended Complaint on March 13, 2012.  On April 2, 2012, defendant filed a motion to dismiss the Second Amended Complaint.

By Order and accompanying Opinion dated March 27, 2013 and filed March 28, 2013, I granted in part, and denied in part, defendant's motion to dismiss plaintiff's Second Amended Complaint.  As noted in my March 27, 2012 Opinion, as a result of that Opinion and its accompanying Order, plaintiff's retaliation claim pursuant to Title VII and the PHRA was the sole claim remaining for disposition.  Hallman v. PPL Corporation, 2013 WL 1285470, at *14 (E.D.Pa. Mar. 28, 2013) (Gardner, J.).

On August 30, 2013, following completion of discovery, defendant filed the within motion seeking summary judgment in its favor on plaintiff's retaliation claim.  On October 3, 2013, plaintiff filed a memorandum of law in opposition to the within motion.  On October 10, 2013, defendant filed a reply brief with leave of court.

Hence this Opinion.

**STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure permits a party to seek summary judgment with respect to a claim or defense, or part of a claim or defense.  Rule 56(a) provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); <u>National Association for the Advancement of Colored People "NAACP" v. North Hudson Regional Fire & Rescue</u>, 665 F.3d 464, 475 (3d Cir. 2012).

For a fact to be considered material, it "must have the potential to alter the outcome of the case." <u>North Hudson</u>, 665 F.3d at 475 (citing <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006)).  Disputes concerning facts which are irrelevant or unnecessary do not preclude the district court from granting summary judgment.  <u>North Hudson</u>, 665 F.3d at 475.

Where a party asserts that a particular fact is, or cannot be, genuinely disputed, the party must provide support for its assertion.  Fed.R.Civ.P. 56(c)(1).  Rule 56(c)(1) provides that party may support its factual assertions by

> (A) citing particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the

-6-

motion only), admissions, interrogatory answers, or other materials; or

(B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

When considering a motion for summary judgment, the district court must view the facts and record evidence presented "in the light most favorable to the non[-]moving party." North Hudson, 665 F.3d at 475 (quoting Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).  Stated differently, "[i]n considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

If the moving party shows that there is no genuine issue of fact for trial, "the non-moving party then bears the burden of identifying evidence that creates a genuine dispute regarding material facts." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Where a defendant seeks summary judgment, the plaintiff cannot avert summary judgment with speculation, or by resting on the allegations in her pleadings, but rather she must present competent evidence from which a jury could reasonably find in her favor.  Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir 1999); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa. 1995)(Reed, J.).

"Ultimately, [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Id. (quoting Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) (internal quotations omitted and alteration in original).

## FACTS

Based upon the pleadings, record papers, depositions, exhibits, declarations, and each party's respective statement of undisputed material facts, and drawing all reasonable inferences in favor of plaintiff, as required by the forgoing standard of review, the pertinent facts are as follows.

Plaintiff Lori Hallman began her employment with defendant PPL Corporation in May 1978 as a Plant Equipment Operator at PPL's Martins Creek Power Plant.[2]

---

[2]       DSOF ¶ 1; PSOF ¶ 1.

In late 2006 or early 2007, Keith Lobach became plaintiff's immediate supervisor.[3]  Mr. Lobach, in turn, reported to Peter Giella.[4]

Mr. Lobach remained plaintiff's immediate supervisor until December 2007 when her shift and, as a result, her supervisor, changed.[5]  Greg Cook became plaintiff's immediate supervisor when her shift changed.[6]

Plaintiff did not have a good relationship with Mr. Lobach at any time while he was her supervisor.  Plaintiff's relationship with Mr. Lobach was consistently bad throughout the time that he was her supervisor.  Mr. Lobach's demeaning nature toward plaintiff was the same throughout the entire time that he was her supervisor.[7]

In February 2007, plaintiff complained to Peter Giella that Keith Lobach made inappropriate comments to plaintiff.[8]  In the spring or summer of 2007, plaintiff filed an internal complaint with PPL for sexual harassment by Keith Lobach.[9]  A few

---

[3]         DSOF ¶ 2; PSOF ¶ 2.

[4]         DSOF ¶ 3; PSOF ¶ 3.

[5]         DSOF ¶ 4; PSOF ¶ 4.

[6]         DSOF ¶ 12; PSOF ¶ 12.

[7]         DSOF ¶¶ 5-7; PSOF ¶¶ 5-7; see Transcript of Videotaped Deposition of Lori A. Hallman taken July 23, 2013 (Document 35-2)("Hallman Deposition"), at pages 67-69, and 74-76.

[8]         DSOF ¶ 9; PSOF ¶ 9.

[9]         DSOF ¶ 8; PSOF ¶ 8.

months later, in the summer of 2007, plaintiff complained to PPL's Human Resources Department that her sexual harassment complaint against Mr. Lobach was not receiving sufficient attention.[10]

In February 2008, plaintiff received her performance evaluation for 2007 ("2007 Evaluation").[11]  The 2007 Evaluation was completed by Keith Lobach and Greg Cook (who became plaintiff's supervisor after her shift was changed in December 2007).  The 2007 Evaluation rated plaintiff's overall performance as "satisfactory".[12]

The only section of the 2007 Evaluation in which plaintiff's performance was rated less than satisfactory was the section assessing "dependability".  The section assessing dependability was prepared by Greg Cook and rated plaintiff's dependability as "marginal".[13]

Plaintiff testified during her deposition that she had a "good" relationship with Greg Cook and does not believe that Mr. Cook engaged in any acts of retaliation in response to plaintiff's 2007 internal complaints about Keith Lobach.[14]

---

[10]      DSOF ¶ 10; PSOF ¶ 10.

[11]      DSOF ¶ 11; PSOF ¶ 11.

[12]      DSOF ¶ 13; PSOF ¶ 13.

[13]      DSOF ¶ 14; PSOF ¶ 14

[14]      DSOF ¶¶ 15-16; PSOF ¶¶ 15-16.

Plaintiff's 2007 Performance Evaluation was consistent with all of the other performance evaluations which she received from 1999 through 2012.  Specifically, in every one of those performance evaluations, plaintiff's overall performance was rated "satisfactory".[15]

From 2007 until the spring of 2012, Denise Galiszewski and Anna Ferraro (two employees of defendant PPL who also work at the Martin's Creek facility and who are sisters)(jointly "the sisters") bullied and harassed plaintiff.[16]

The sisters are employed by PPL as Utility Workers who perform "janitorial-type work".  The sisters were not supervised by, and did not report to, Keith Lobach.  The sisters reported to Roger Oswald.  Roger Oswald is a friend of Keith Lobach's.[17]

Keith Lobach testified at his deposition that he was aware that there were "a lot of problems" between plaintiff and the sisters in 2008 and or 2009.[18]

On February 24, 2010 plaintiff filed a charge of discrimination with the EEOC.[19]  Nobody at PPL's Martins Creek or

---

[15]     DSOF ¶¶ 17-18; PSOF ¶¶ 17-18.

[16]     DSOF ¶ 19; PSOF ¶ 19.

[17]     Transcript of Deposition of Keith Lobach taken August 22, 2013 (Document 41-6)("Lobach Deposition"), at pages  20 and 24.

[18]     Lobach Deposition at page 22.

[19]     DSOF ¶ 22; PSOF ¶ 22.

Allentown facilities indicated to plaintiff any awareness of the fact that plaintiff filed the February 24, 2010 charge of discrimination.[20]  Plaintiff did not recall any negative treatment by anyone at PPL after February 24, 2010, except that the sisters continued to bully her.[21]

## DISCUSSION

### Contentions of the Parties

#### Defendant's Contentions

Defendant PPL contends that it is entitled to summary judgment on plaintiff Hallman's Title VII retaliation claim for two reasons.  First, defendant contends that plaintiff's retaliation is time-barred because "[p]laintiff has failed to set forth one materially adverse action which occurred within three-hundred days of her filing of the Charge [of Discrimination] with the EEOC."[22]

Second, defendant contends that it is entitled to summary judgment because the undisputed facts would not permit a reasonable factfinder to conclude that a causal connection exists between the statutorily-protected actions taken by

---

[20]        Hallman Deposition at pages 131-132; <u>see</u> DSOF ¶ 23; PSOF ¶ 23.

[21]        Hallman Deposition at pages 132-133.

[22]        Defendant's Brief at page 11.

plaintiff and the allegedly-retaliatory conduct directed toward her.[23]

<u>Plaintiff's Contentions</u>

Plaintiff contends that the record evidence (without specifying which record evidence) sets forth discrete acts (without identifying what acts) which occurred within the 300-day limitations period and were part of an ongoing course of retaliatory conduct, which allegedly renders the entirety of plaintiff's retaliation claim timely under the continuing violation doctrine.[24]

Plaintiff further contends that she has provided sufficient record evidence to support her Title VII retaliation claim, which evidence creates genuine issues of material fact for trial.[25]

**<u>Retaliation Claim</u>**

Count I of the Second Amended Complaint is labeled "Illegal Retaliation in Violation of Title VII and the Pennsylvania Human Relations Act".[26]  Counts III and IV of the

---

[23]      Defendant's Brief at pages 17-18.

[24]      Plaintiff's Memorandum at page 9.

[25]      <u>See</u> <u>id.</u> at pages 5-8.

[26]      Second Amended Complaint at page 14.

Plaintiff does not contend that there is any respect in which her retaliation claim under the PHRA differs from her claim under Title VII.

(<u>Footnote 26 continued</u>):

-13-

Second Amended Complaint also aver that plaintiff was subject to unlawful retaliation in violation of Title VII and the PHRA.[27]

Specifically, plaintiff avers that "she was retaliated against for having brought the aforementioned sexual harassment charge against [Keith] Lobach and after her legal counsel wrote a letter to the Defendant's Counsel" and that "she was retaliated against for having filed an EEOC charge against the Defendant."[28]

Title VII makes it unlawful for an employer to retaliate against an employee for opposing the employer's discriminatory conduct or for bringing or supporting an action arising from the employer's discriminatory conduct. 42 U.S.C. § 2000e-3(a).

Generally, in order to establish a prima facie claim for retaliation, an employee-plaintiff must provide sufficient evidence to support a plausible inference that "(1) the employee engaged in a protected employee activity; (2) the employer took adverse employment action after or contemporaneous with the

---

(Continuation of footnote 26):

Because the parties treat plaintiff's retaliation claim as coextensive under both statutes, and because the Third Circuit has explained that the analytical framework used for addressing retaliation claims under Title VII is the same as is applied under the PHRA, see Slagle v. County of Clarion, 435 F.3d 262, 265 (3d Cir. 2006), the following discussion applies to plaintiff's retaliation claim under both statutes.

[27]    See Second Amended Complaint at ¶ 94 (Count III as to Title VII), and ¶ 100 (Count IV as to the PHRA).

[28]    Id. at ¶¶ 82-83.

employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Farrell v. Planters Lifesavers Company, 206 F.3d 271, 279 (3d Cir. 2000), quoted in Brown-Baumbach v. B & B Automotive, Inc., 437 Fed.Appx. 129, 135 (3d Cir. 2011).

As explained in my March 27, 2013 Opinion, see Hallman, 2013 WL 1285470, at *8, a person has engaged in Title VII-protected activity when that person opposes gender discrimination, including sexual harassment.  See Barber v. CSX Distribution Services, 68 F.3d 694, 702 (3d Cir. 1995).

An adverse action, for purposes of a Title VII retaliation claim, means that "a reasonable employee would have found the challenged action *materially adverse*, which...means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Railway Company v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L. Ed. 2d 345 (2006)(emphasis added).

The United States Supreme Court noted that "[a]n employer can effectively retaliate against an employee by taking actions not directly related to [her] employment or by causing [her] harm outside of the workplace" and, accordingly, that "the antiretaliation provision, unlike the substantive [antidiscrimination] provision, is not limited to discriminatory actions

that affect the terms and conditions of employment." Id.,
548 U.S. at 63-64, 126 S.Ct. at 2412-2413, 165 L.Ed.2d at 357.

"The element of causation, which necessarily involves
an inquiry into the motives of the employer, is highly context-
specific." Kachmar v. Sungard Data Systems, 109 F.3d 173, 178
(3d Cir. 1997).

The requisite causal connection can be established by
showing temporal proximity between the Title VII protected
activity and the adverse action. Merit v. SEPTA,
315 F.Supp.2d 689, 707 (E.D.Pa. 2004)(Rufe, J.)(citing Clark
County School District v. Breeden, 532 U.S. 268, 273,
121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)).  However, "the timing
of the allegedly retaliatory action must be 'very close' or
'unusually suggestive' of retaliatory motive before a causal
link will be inferred." Id. (quoting Breeden, supra).[29]

<u>Protected Activities</u>

In her Second Amended Complaint, plaintiff advances
three instances of purportedly-protected activity in support of
her Title VII retaliation claim.[30]  Specifically, plaintiff
alleges that she was retaliated against for (1) asserting her

---

[29]     Indeed, plaintiff expressly acknowledges that timing alone is not
enough to establish a causal connection between statutorily-protected
activity and retaliatory conduct unless the timing is "unusually suggestive".
(Plaintiff's Memorandum at page 6.)

[30]     See Second Amended Complaint at ¶¶ 82-83.

intra-PPL complaints in 2007 to Peter Giella and Human Resources about sexual harassment by Keith Lobach; (2) the September 19, 2008 letter sent by Attorney Russo to Andy K. Williams at PPL Services Corporation in Allentown, Pennsylvania concerning the sister's treatment of plaintiff;[31] and (3) filing her September 24, 2010 Charge of Discrimination with the EEOC.[32]

As explained in my March 27, 2013 Opinion in this matter, the September 19, 2008 letter from Attorney Russo was not Title-VII-protected activity because it was a general complaint about treatment of plaintiff by her co-workers, and did not specifically complain about gender discrimination or sexual harassment. See Hallman, 2013 WL 1285470, at *7-10.

Accordingly, the two instances of protected activity upon which plaintiff's remaining retaliation claim rests are (1) plaintiff's intra-PPL complaints in 2007 to Peter Giella and Human Resources about sexual harassment by Keith Lobach, and (2) filing her charge of discrimination with the EEOC on September 24, 2010.[33]

---

[31]    See Second Amended Complaint at ¶ 82, Exhibit A.

[32]    Id. at ¶ 83.

[33]    See Id. at ¶¶ 82-83; Defendant's Brief at pages 13 and 17.

For purposes of summary judgment, defendant does not dispute that plaintiff engaged in these two Title-VII-protected activities.[34]

### 2007 Internal Complaints of Sexual Harassment

#### *Keith Lobach and the Sisters*

Plaintiff bases her Title VII retaliation claim upon the actions of three individuals employed by defendant PPL at the times pertinent to this action: Keith Lobach (plaintiff's former co-worker and supervisor), and Anna Ferrao and Denise Galiszewski (sisters employed by PPL as Utility Workers).[35]

In the Second Amended Complaint, plaintiff avers that "[i]n addition to Lobach's harassment, [she] has also been harassed by two female employees...who are sisters" and that "Lobach has directed Galiszewski and Ferrao to gather information on the Plaintiff and to harass her."[36]

Indeed, plaintiff's allegation in the Second Amended Complaint that the sister's conduct toward her was undertaken at the direction or behest of Keith Lobach formed, in part, the basis for my decision to deny defendant's motion to dismiss the

---

[34]         Defendant's Brief at page 13.

[35]         Harassment (Sexual, Racial, Etc.) Questionnaire dated September 16, 2010 by Lori Hallman (Document 41-9), at ¶ 1(b); see [Undated] Harassment Questionnaire (Document 41-8), at ¶ 1(a).

[36]         Second Amended Complaint at ¶¶ 18-19.

Second Amended Complaint as to plaintiff's Title VII retaliation claim.  See Hallman, 2013 WL 1285470, at *9.

While I was required to accept plaintiff's factual averment concerning the connection between Keith Lobach and the sisters' conduct toward plaintiff as true for purposes of defendant's motion to dismiss under Rule 12(b)(6), acceptance of that purported fact is not required for purposes of defendant's within motion for summary judgment under Rule 56 unless plaintiff provides record evidence supporting such fact.  As described below, plaintiff has not done so here.

However, this is not to say that the record evidence in this case is devoid of any mention of an alleged connection between Keith Lobach and the conduct of the sisters toward plaintiff.  Indeed, throughout the record papers and documents in this case, plaintiff speculates about the existence of a causal connection between Keith Lobach and the sisters' conduct toward plaintiff.  However, as explained below, such speculation does not create a genuine issue of fact sufficient to overcome defendant's properly-supported motion for summary judgment.

Specifically, in her memorandum in opposition to summary judgment, plaintiff states that "Denise Galiszewski and Anna Ferrao reported to an individual by the name of Roger Oswald.  Keith Lobach...indicated that Roger Oswald was a friend

of his."[37]  According to plaintiff, this connection "raises a suspicion and perhaps a jury question as to whether or not Lobach ad (sic) Oswald had anything to do with the obstreperous conduct of Galiszewski and Ferrao" toward plaintiff.[38]

Similarly, in a typewritten attachment submitted together with her February 24, 2010 EEOC charge, plaintiff, after discussing Keith Lobach's actions, addressed her issues with the sisters, stating that "[t]his is where the second harassment[,] or more precisely bullying[,] issue comes into play.  I am convinced (and I believe others to be also) that this is all interconnected."[39]  Plaintiff went on to state, "I am convinced (others also I suspect) that Keith Lobach was involved in the background, or behind the scenes."[40]

Finally, plaintiff wrote, "I *feel* this bullying initiated by Anna [Ferrao] and her sister Denise [Galiszewski]

---

[37]        Plaintiff's Memorandum at page 4.

[38]        <u>Id.</u>

[39]        [Undated] Harassment Questionnaire (Document 41-8), at page 4.

        Plaintiff does not identify these "others" who share her conviction that Keith Lobach was directing or otherwise causing the sisters' actions toward plaintiff.  <u>Id.</u>  However, in a separate typewritten document entitled "Attempted Conflict Resolution with Sisters" (Document 41-10), at page 8, plaintiff states that, at an unspecified time, Susan Yeakel (a PPL employee who had previously lodged internal complaints with PPL about Keith Lobach) told plaintiff that "it was [Ms. Yeakel's] feeling that all these problems with Anna [Ferrao] etc[.], were a result of [plaintiff's] past problems with [Keith] Lobach and [plaintiff's] reporting [of] him to HR&D." <u>Id.</u>

[40]        <u>Id.</u> at page 5.

by association was precipitated by Keith Lobach and his desire
to make my life miserable at PPL because I found his conduct
inappropriate and unprofessional to the point that I felt I had
to report him to HR&D."[41]

Similarly, during her deposition, plaintiff testified
concerning her belief that a causal connection existed between
Keith Lobach and the sisters' conduct toward her.

Specifically, under examination from Steven E.
Hoffman, Esquire, counsel for defendant, plaintiff testified
that Keith Lobach "used certain individuals [(the sisters)] in
order to achieve his goal" of "get[ting] back" at plaintiff.[42]

However, Attorney Hoffman further explored with
plaintiff the factual basis for her assertion that the sisters
were being used as instruments of retaliation by Keith Lobach,
and were bullying and harassing plaintiff at Keith Lobach's
direction or behest.[43]  Plaintiff's deposition testimony, quoted
at length below, demonstrates the lack of a sufficient factual
basis for plaintiff's feeling that the sisters were acting at
Keith Lobach's direction or behest.

---

[41]          "Attempted Conflict Resolution with Sisters" (Document 41-10), at
page 8 (emphasis added).

[42]          Hallman Deposition at page 84.

[43]          Id. at pages 84-91.

[Attorney Hoffman]:   What facts do you have that Mr. Lobach
                      in any way caused these two women to
                      bother you, harass you, annoy you, do
                      anything?

[Plaintiff]:          What facts?  Well, I have -- there were
                      people who were witness[es] to Keith
                      [Lobach] and this -- the one sister
                      specifically having conversations.

[Attorney Hoffman]:   Which sister is that?

[Plaintiff]:          Anna.

[Attorney Hoffman]:   And do you recall when these
                      conversations occurred?

[Plaintiff]:          Not -- not offhand, no.

[Attorney Hoffman]:   Did anyone tell you what was said
                      between Mr. Lobach and Anna?

[Plaintiff]:          No.  Because it was a private
                      conversation.

[Attorney Hoffman]:   So, again, whether you believe Mr.
                      Lobach may have said something to Anna,
                      you have no knowledge –

[Plaintiff]:          No.

[Attorney Hoffman]:   -- from any source [on] what was said.

[Plaintiff]:          I don't know, because it was just
                      between the two of them.

                              *    *    *

[Attorney Hoffman]:   What facts do you have to support your
                      belief that these two women [(the
                      sisters)] harassed you at Mr. Lobach's
                      behest?

-22-

[Plaintiff]:          Well, I would say that prior to 2007,
                      Anna and I had a good relationship.
                      And right around the fall of 2007,
                      that's when our relationship...
                      deteriorated.

                      And...I feel that it was a result that
                      she just turned her -- at that --
                      during -- somewhere around in that
                      timeframe, her sister [Denise] started
                      to work for the company....

                      I don't know, but I felt that she and,
                      subsequently, she and her sister got
                      wind of information or word that I had
                      a past -- had a past history problem --
                      had problems with Keith, my supervisor
                      at the time and --

[Attorney Hoffman]:   How do you know they [(the sisters)]
                      got word of this?

[Plaintiff]:          Well, there's only so many people that
                      work there, and people talk.  So she
                      knew that -- and she -- she just felt
                      that, you know, she didn't like me
                      anymore -- for whatever reason.

                      And she thought she could -- or if she
                      didn't, Keith thought or Keith maybe
                      thought that, along with Anna, they
                      could join forces, and Keith -- I felt
                      that Keith would use them as instru-
                      ments on his behalf to discredit me and
                      get dirt on me, you know.

[Attorney Hoffman]:   Under oath, can you say with certainty
                      that Mr. Lobach ever directed these two
                      women to get dirt on you?

[Plaintiff]:          Directed them?  I don't know that,
                      because they would have been private
                      conversations....

-23-

[Attorney Hoffman]:   Well, did either of the sisters
                      indicate to you that they were
                      harassing you because you didn't like
                      Keith [Lobach] or Keith [Lobach] didn't
                      like you?

[Plaintiff]:          They would not admit to me that they
                      were, you know, blatantly harassing me.
                      They wouldn't admit that.

[Attorney Hoffman]:   And so how do you know that they came
                      to some type of arrangement with
                      Mr. Lobach to harass you?

[Plaintiff]:          It was a timely thing.  It all -- all
                      the forces kind of joined together at
                      the same time.  It was ironic to me
                      that all these things are happening at
                      the same time.[44]

        After Attorney Hoffman questioned plaintiff on the

duration of the sisters' mistreatment of plaintiff, the

following exchange occurred between Attorney Hoffman and

plaintiff:

[Attorney Hoffman]:   *So you believe from 2007 through 2012,
                      these two [sisters] harassed you
                      because you complained about Mr.
                      Lobach?*

[Plaintiff]:          *No.  They harassed me because they were
                      mean women.  They were bullies.  It was
                      a bullying type of action.  It wasn't
                      -- I don't think it had anything to do
                      with -- I mean, they didn't -- they
                      didn't care.*

                      They probably liked that, you know, I
                      had this animosity with -- with Lobach
                      or Lobach had animosity with me.  They
                      fed off of that.

---

[44]          Hallman Deposition at pages 85-88.

That's why they -- I feel they made themselves available in his presence, and he would possibly recruit them to get dirt....

[Attorney Hoffman]: But you can't say with any factual certainty that Mr. Lobach recruited them, correct?

[Plaintiff]: It's just coincidental and a feeling and odd that behaviors would take place that never happened in my 30[-]plus years of working there.

[Attorney Hoffman]: And I'm not asking for what your feelings are.  I'm asking what facts you know.

*What facts do you know that Mr. Lobach recruited these two women to bully or harass you?*

[Plaintiff]: *I don't have factual information....*

[Attorney Hoffman]: *And you cannot say that it's true that these two women bullied you because they were upset that you complained about Mr. Lobach to either [Peter] Giella or [PPL] Human Resources.*

[Plaintiff]: *I don't -- I don't think they cared. They just didn't like me.*  They wanted to make my life miserable.  They wanted me to leave.

And so they just – that just the way they were.  *They were just nasty women who were hellbent on making my life miserable.*

*And if they could use Keith Lobach as, for lack of a better term, a weapon in their arsenal or their bag of tricks to get at me, you know, so be it.*[45]

---

[45]          Hallman Deposition at pages 89-91 (emphasis added).

-25-

Plaintiff's deposition testimony above demonstrates that the putative connection between plaintiff's Title VII protected activity (her spring 2007 complaints to Peter Giella and her summer 2007 complaint to PPL Human Resources concerning sexually harassing comments by Keith Lobach), is based upon plaintiff's own speculation and not upon facts within (or reasonable inferences from) the record evidence provided by the parties for purposes of this summary judgment motion.

"Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." Lexington Insurance Company v. Western Pennsylvania Hospital, 423 F.3d 318, 333 (3d Cir. 2005)(quoting Hedberg v. Indiana Bell Telephone Company, Inc., 47 F.3d 928, 932 (7th Cir. 1995)(emphasis in original)).

Where, as here, plaintiff's contention that particular conduct (that of the sisters) was motivated by retaliatory animus is supported by nothing more than speculation and supposition, plaintiff does not establish dispute of fact concerning the necessary causal connection. Rearick v. Penn State University, 416 Fed.Appx. 223, 225 (3d Cir. 2011).

In short, upon the record evidence before the court on defendant's summary judgment motion, a reasonable factfinder could not conclude -- without resort to mere speculation -- that the sister's conduct toward plaintiff was either directed,

requested, or otherwise caused by Keith Lobach; or, if not directed by Keith Lobach, nonetheless motivated by the sisters' intent to retaliate against plaintiff for her complaints against Keith Lobach for sexual harassment to Peter Giella in spring 2007 or to to PPL's Human Resources Department in summer 2007.

As explained further below, the absence of sufficient record evidence demonstrating a causal connection between Keith Lobach and the sister's conduct toward plaintiff undermines plaintiff's claim of retaliation based upon Mr. Lobach's actions during 2007 and early 2008.

*Adverse Actions by Keith Lobach*

Plaintiff's Memorandum states that "[p]laintiff claims that she was retaliated against after she filed sexual harassment charges against [Keith] Lobach." Specifically, plaintiff's Memorandum states that Mr. Lobach (1) "began investigating the amount of time plaintiff spent in the women's locker room" and (2) "tried...to trap [plaintiff] with a safety violation".[46] Additionally, Plaintiff's Memorandum states (3) that "Mr. Lobach's negative comments in [plaintiff's] 2007 [performance] review were in response to [plaintiff's] prior complaints of sexual harassment by Mr. Lobach."[47]

---

[46]        Plaintiff's Memorandum at page 1.

[47]        Id. at page 2.

For the reasons expressed below, these alleged actions are insufficient to substantiate plaintiff's claim of retaliation in violation of Title VII.

First, with respect to Keith Lobach's scrutiny of the amount of time plaintiff spent in the women's locker room of the Martin's Creek facility while at work, an employer's scrutiny of an employee, while perhaps unpleasant or annoying to the employee, does not create the sort of hostile work environment that would satisfy Title VII's anti-retaliation provision. See Martinelli v. Penn Millers Insurance Company, 269 Fed.Appx. 226, 230 (3d Cir. 2008).  "There is nothing out of the ordinary in a supervisor watching an employee work or telling [her] to get back to work."  Noel v. The Boeing Company, 2011 U.S.Dist. LEXIS 107203 (E.D.Pa. Sept. 21, 2011)(Schiller, J.).

"Micromanaging" by, or "[i]ncreased scrutiny" from, a manager or supervisor does not, under most circumstances, rise to the level of a materially adverse action as required under Burlington Northern, supra, for purposes of a Title VII retaliation claim.  However, a detrimental reassignment of duties or the imposition of unduly harsh discipline would ordinarily constitute materially adverse action for purposes of a retaliation claim.  McKinnon v. Gonzalez, 642 F.Supp.2d 410, 426 (D.N.J. 2009).

Here, although Plaintiff's Memorandum asserts that Keith Lobach began investigating the amount of time plaintiff spent in the women's locker room in retaliation for plaintiff's internal complaints of sexual harassment against him, plaintiff actually avers in her Second Amended Complaint that Mr. Lobach "began investigating the amount of time plaintiff spent in the women's locker room, *believing she was not working.*"[48]

Plaintiff does not contend, nor does the record evidence demonstrate, that plaintiff was disciplined as a result of Keith Lobach's scrutiny of the amount of time she spent in the women's locker room while at work. In short, Keith Lobach's scrutiny of the amount of plaintiff spent in the women's locker room does not rise to the level of a materially adverse action for purposes of plaintiff's retaliation claim.

To the extent that plaintiff contends that her 2007 Performance Evaluation is a materially adverse action in retaliation for her 2007 internal complaints of sexual harassment, that argument is unavailing.

In Ponton v. AFSCME, AFL-CIO, 395 Fed.Appx. 867 (3d Cir. 2010), the United States Court of Appeals for the Third Circuit affirmed the district court's grant of summary judgment against plaintiff Donnell Ponton on his Title VII retaliation claim. More specifically, the Third Circuit held that a

---

[48]       Second Amended Complaint at ¶ 10 (emphasis added).

performance evaluation of Mr. Ponton which rated him "satisfactory" but noted that there were occasions in which Mr. Ponton failed to "follow directives" was not materially adverse and, therefore, did not support Mr. Ponton's retaliation claim. Ponton, 395 Fed.Appx. at 874.  Although it is a non-precedential Opinion, Ponton nonetheless provides persuasive authority here.

Here, as described above, and similar to Mr. Ponton, plaintiff contends that her 2007 Performance Evaluation issued in February 2008 represents retaliation in response to plaintiff's filing of an internal complaint with PPL alleging sexual harassment by Keith Lobach.  The Ponton case provides persuasive support for the conclusion that plaintiff's 2007 Performance Evaluation was not a materially adverse action sufficient to establish a violation of Title VII's anti-retaliation provision.

That conclusion is buttressed by the undisputed fact that the overall rating which plaintiff received for 2007 (namely, "satisfactory") is the same rating which she received on each of her evaluations for the years 1999 through 2006 (prior to plaintiff's internal complaint against Keith Lobach), and for the years 2008 through 2012 (following that internal complaint).  Accordingly, I conclude that plaintiff's 2007 Performance Evaluation was not a materially adverse action for purposes of her retaliation claim.

Moreover, it is undisputed that Greg Cook (plaintiff's supervisor after she transferred shifts in December 2007), and not Keith Lobach, prepared the only section of plaintiff's 2007 Performance Evaluation in which she was rated less than satisfactory (specifically, the dependability section where she was rated "marginal").[49]  Plaintiff has not argued (or cited any record evidence suggesting) that Keith Lobach caused Greg Cook to rate plaintiff's dependability as "marginal" in her 2007 Performance Review, or that Mr. Cook gave plaintiff that rating in retaliation for her prior internal complaints of sexual harassment against Keith Lobach.

For those reasons, I conclude that plaintiff's 2007 Performance Review was not a materially adverse action and that the undisputed fact that Mr. Lobach did not rate plaintiff's dependability as "marginal" in that review would prevent a reasonable factfinder from concluding that a causal connection existed between the 2007 Performance Review (issued in February

---

[49]         DSOF at ¶ 14; PSOF at ¶ 14.

          Although paragraph 14 of Plaintiff's Response to Defendant's Statement of Undisputed Facts (Document 41-1)("PSOF") indicates that paragraph 14 of Defendant's Statement of Material Undisputed Facts (Document 36) ("DSOF") is "[a]dmitted in part and denied in part", nothing in plaintiff's paragraph 14 contradicts or disputes the substance of defendant's para- graph 14 described herein.  Rather, plaintiff merely notes that she submitted a six-page written response to her 2007 Performance Review.  While plaintiff disputes the question of whether the "marginal" rating for dependability was warranted, she does not dispute (and does not cite any record evidence contradicting) the fact that Greg Cook, and not Keith Lobach, rated her dependability "marginal" in her 2007 Performance Review.

2008) and plaintiff's sexual harassment complaints to Peter Giella and PPL's Human Resources Department in 2007.

*Timeliness*

Plaintiff stated in Plaintiff's Memorandum that during her deposition (specifically, at pages 70 through 83 of her deposition transcript) she elaborated on the allegedly-retaliatory actions taken by Keith Lobach in response to her filing the sexual harassment complaint against him with PPL.[50]

Plaintiff stated during her deposition that there were "many things" that Keith Lobach did to retaliate against her assertion of internal claims of sexual harassment against him.[51]

Specifically, plaintiff testified during her deposition that, at some unspecified time, Keith Lobach called her "very vile names" (specifically, "bitch") in the men's locker room at the Martin's Creek facility,[52] and that Mr. Lobach was "just plain nasty to [her]".[53]

Plaintiff also testified that Keith Lobach "accused [her] of not having the proper safety gear on" while she was adding mini-balls to a piece of equipment at the Martin's Creek facility, even though she was wearing proper safety gear at the

---

[50]      Plaintiff's Memorandum at page 4.

[51]      Hallman Deposition at page 73.

[52]      Id. at page 70.

[53]      Id. at page 75.

time.[54]  This allegedly-false accusation concerning plaintiff's
safety gear is the incident referred to in the Second Amended
Complaint and in Plaintiff's Memorandum where plaintiff alleges
that Mr. Lobach attempted to "trap [plaintiff] in with a safety
violation."[55]  Plaintiff's undated Harassment Questionnaire
submitted together with her February 24, 2010 EEOC charge states
that the incident where Mr. Lobach tried to trap her with a
safety violation occurred prior to February 19, 2007.[56]

      As explained further below, plaintiff's retaliation
claim -- to the extent that it is based upon Keith Lobach's
actions allegedly taken in response to plaintiff's 2007 sexual
harassment complaints to Peter Giella and PPL's Human Resources
Department -- is time-barred because those actions occurred
prior to March 2008, well before April 30, 2009, and thus
outside of the applicable 300-day limitations period, and
because plaintiff's continuing-violation argument is unavailing.

      The United States Court of Appeals for the Third
Circuit has explained that "[t]o bring suit under Title VII, a
claimant in a deferral state, such as Pennsylvania, must first
file a complaint with the EEOC within 300 days of the alleged

---

[54]      Hallman Deposition at page 40.

[55]      Second Amended Complaint at ¶ 11; see Plaintiff's Memorandum at
pages 1-2.

[56]      [Undated] Harassment Questionnaire (Document 41-8), at page 3.

unlawful employment practice." Mandel v. M&Q Packaging Corp.,
706 F.3d 157, 165 (3d Cir. 2013)(citing 42 U.S.C. § 2000e-
5(e)(1)).

     "[D]iscrete discriminatory acts are not actionable if
time barred, even when they are related to acts alleged in
timely filed charges." Id. (quoting National Railroad Passenger
Corporation v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061,
153 L.Ed.2d 106 (2002). "A discrete act in itself constitutes a
separate actionable unlawful employment practice." Mandel,
706 F.3d at 165. Discrete acts include, for example, "termi-
nation, failure to promote, denial of transfer, or refusal to
hire." Id.

     Both parties here acknowledge that the continuing
violation doctrine provides an exception to the 300-day
limitations period in a deferral state like Pennsylvania.[57]

     Under the continuing violation doctrine, discrimin-
atory acts that are not individually actionable may be
aggregated to make out a hostile work environment claim. Such
acts can occur at any time so long as they are linked in a
pattern of actions which continues into the applicable
limitations period. Mandel, 706 F.3d at 165 (quoting O'Connor
v. City of Newark, 440 F.3d 125, 127 (3d Cir.2006)).

---

[57]    See Defendant's Brief at page 7; Plaintiff's Memorandum at
page 9.

To determine whether the conduct or action(s) of which a plaintiff complains are properly characterized as a discrete act or a continuing violation, the Third Circuit directs district courts to examine the subject matter of the underlying occurrences (that is, whether the occurrences constitute the same type of discrimination), and the frequency of those occurrences.  Mandel, 706 F.3d at 166 n.2.

In Mandel, the Third Circuit held that plaintiff would be permitted to present a continuing violation theory at trial because the record evidence showed at least one act within the 300-day limitations window and "many of the acts that occurred prior to the applicable limitations period involved similar conduct by the same individuals, suggesting a persistent, ongoing pattern."  Id. at 167.

To the limited extent that Plaintiff's Memorandum explains her response to defendant's contention that her retaliation claim is time-barred, plaintiff asserts that she

> provided the EEOC with a complete diary of event[s] regarding ongoing actions being taken against her from 2007 through 2010....  The discrete acts within the 300 day window, as set forth in the [P]laintiff's evidence, clearly allow the Plaintiff to move forward with a continuing violation case....  [Ms.] Hallman has proffered discrete acts occurring within the limitations period.[58]

---

[58]     Plaintiff's Memorandum at page 9.

It is undisputed that plaintiff filed her EEOC charge of Discrimination on February 24, 2010.  Accordingly, conduct which occurred on or before April 30, 2009 is outside of the 300-day deferral-state limitations period for Title VII claims.

Plaintiff does not contest defendant's time computations.  Rather, as noted above, plaintiff contends that all conduct referred to in the record from 2007 through 2012 may be relied upon to support her retaliation claim under a continuing violation theory because there is record evidence of conduct within the limitations period, that is, conduct which occurred on or after May 1, 2009.

I conclude that plaintiff's retaliation claim is time-barred to the extent that it is premised upon conduct by Keith Lobach in 2007 and early 2008 following plaintiff's 2007 complaints of sexual harassment to Peter Giella and PPL Human Resources.

I reach that conclusion because, regardless of whether Mr. Lobach's actions are properly categorized as discrete acts or a continuing violation, the instances when Keith Lobach tried to trap plaintiff in with a safety violation, and scrutinized the amount of time plaintiff was spending in the women's locker room occurred while plaintiff was still under Mr. Lobach's supervision -- in other words, in or before December 2007, well outside the applicable limitations period.  Similarly, the

allegedly-retaliatory 2007 Performance Review was issued in
February 2008, well outside the applicable limitations period.

Plaintiff testified that tension remained between
Keith Lobach and her after she transferred shifts and was no
longer under Mr. Lobach's supervision.  However, the only
conduct engaged in by Keith Lobach about which plaintiff
complains and which occurred after April 30, 2009 is
Mr. Lobach's "mis-writing" of plaintiff's maiden name (Yocum,
typed by Mr. Lobach as "YoCum") on several Daily Shift
Assignment sheets that he emailed to the employees on his shift
in late August and early September 2010.[59]  Plaintiff states that
"[i]t is her feeling that this is a deliberate attempt by
[Keith] Lobach to demean and retaliate against [her] for the
2007 claim."[60]

In other words, plaintiff's retaliation claim is
premised upon actions allegedly taken by Mr. Lobach in 2007 and
early 2008, followed by several work schedules using a crude
take on plaintiff's maiden name two-and-a-half years later in
late August, and early September 2010.  This is not a
"persistent, ongoing pattern" which would support a continuing

---

[59]      See Harassment (Sexual, Racial, Etc.) Questionnaire dated
September 16, 2010 by Lori Hallman (Document 41-9), at Exhibit G (Document
41-13 and 41-14), at page 3 of Document 41-13.

[60]      Id.

violation claim based upon Mr. Lobach's comments.   <u>Mandel</u>,
706 F.3d at 167.

Moreover, as described above, the record evidence here
would not permit a reasonable factfinder to conclude, without
merely speculating, that the actions of the sisters toward
plaintiff during the intervening period were taken at the
direction or behest of Keith Lobach or were otherwise motivated
by retaliatory animus on the part of the sisters toward
plaintiff for her 2007 sexual harassment complaints against
Keith Lobach.

Accordingly, the actions by the sisters supported by
the record here are not part of a persistent, ongoing course of
action against plaintiff in retaliation for her 2007 sexual
harassment complaints against Mr. Lobach.  Therefore, the
sisters' actions toward plaintiff do not permit plaintiff to
rely upon Mr. Lobach's 2007 and early 2008 actions to support
her retaliation claim.

For all of the reasons expressed above, I conclude
that defendant is entitled to summary judgment in its favor on
plaintiff's Title VII retaliation claim based upon her 2007
internal complaints of sexual harassment to Peter Giella and
PPL's Human Resources Department.

<u>2010 EEOC Charge of Discrimination</u>

As noted above, plaintiff alleges in her Second Amended Complaint that she was retaliated against for filing her EEOC charge on February 24, 2010.[61]

Defendant argues in its motion for summary judgment that plaintiff cannot point to any record evidence demonstrating that she was subjected to an adverse employment action after she filed her February 24, 2010 EEOC charge.[62]

To the very limited extent that Plaintiff's Memorandum responds to this argument from defendant, plaintiff asserts that "[e]ven in 2010, [Keith] Lobach was intentionally mis-writing plaintiff's maiden name" and makes a general reference to the documents submitted by plaintiff's counsel to the EEOC by cover letter dated September 24, 2010.[63]

Mr. Lobach's mis-writing of plaintiff's maiden name, described above, while juvenile and unprofessional, does not rise to the level of a materially adverse action sufficient to sustain a retaliation claim under Title VII.

Moreover, plaintiff does not cite (and examination of the record does not reveal) any evidence suggesting that Keith Lobach or the sisters (or anyone else at PPL) knew that

---

[61]    <u>See</u> Second Amended Complaint at ¶ 83.

[62]    Defendant's Brief at pages 17-18.

[63]    Plaintiff's Memorandum at pages 5 and 9.

plaintiff filed the February 24, 2010 EEOC charge.  Accordingly, the record evidence would not permit a reasonable factfinder to conclude that a causal connection existed between plaintiff's February 24, 2010 EEOC charge and any conduct concerning her which occurred after that date.  See Ambrose v. Township of Robinson, Pennsylvania, 303 F.3d 488, 493-493 (3d Cir. 2002); Hutchins v. United Parcel Service, Inc., 197 Fed.Appx. 152, 157 (3d Cir. 2006).

Therefore, I grant defendant's motion to the extent that it seeks summary judgment in favor of defendant on plaintiff's retaliation claim based upon plaintiff's February 24, 2010 EEOC charge.

### "Cat's Paw" Theory

In her memorandum in opposition to defendant's motion for summary judgment, plaintiff contends that "[a] jury should be allowed to consider the effect of the 'cat's paw'."[64]

As quoted in Plaintiff's Memorandum, in the Cook case (cited in footnote 64, below), Judge Posner explained the cat's paw theory as follows:

> In the fable of the cat's paw (a fable offensive to cats and cat lovers, be it noted), a monkey who wants chestnuts that are roasting in a fire persuades an intellectually challenged cat to fetch the chestnuts from the fire for the monkey, and the cat does so but

---

[64]      Plaintiff's Memorandum at pages 8-9 (citing and quoting Cook v. IPC International Corporation, 673 F.3d 625, 629 (7th Cir. 2012)(Posner, J.)).

in the process burns its paw.  In employment
discrimination law the "cat's paw" metaphor refers to
a situation in which an employee is fired or subjected
to some other adverse employment action *by a
supervisor* who himself has no discriminatory motive,
but who has been manipulated by a subordinate who does
have such a motive and intended to bring about the
adverse employment action.  So if for example the
subordinate has told the supervisor that the employee
in question is a thief, but as the subordinate well
knows she is not, the fact that the supervisor has no
reason to doubt the truthfulness of the accusation,
and having no doubt fires her, does not exonerate the
employer if the subordinate's motive was
discriminatory.

Cook, 673 F.3d at 629 (emphasis added).

        Judge Posner further explained that, under the cat's

paw theory, because a supervisor is an agent of the employer,

when the supervisor causes an adverse employment action the

employer causes it; and when discrimination is a motivating

factor in the supervisor's doing so, it is a motivating factor

in the employer's action, for which the employer may be liable

under Title VII.  Id. (citing Staub v. Proctor Hospital,

131 S.Ct. 1186, 1190 n.1, 1192-1194, 179 L. Ed. 2d 144, 150 n.1,

153-155 (2011)).

        Here, plaintiff suggests that Peter Giella is the

metaphoric cat through whom Keith Lobach's "never-ending animus"

toward plaintiff was effectuated.[65]  However, plaintiff does not

suggest, nor does the record evidence demonstrate, that Peter

Giella (the alleged instrument of Keith Lobach) fired plaintiff,

_____

[65]        Plaintiff's Memorandum at page 7.

-41-

demoted plaintiff, or otherwise took an adverse employment
action against plaintiff.

Plaintiff's grievance with respect to Mr. Giella is
not that he took an adverse employment action toward her at
Mr. Lobach's request or urging, but rather that Mr. Giella did
not respond in a satisfactory manner to plaintiff's complaints
concerning Mr. Lobach, Ms. Galiszewski, and Ms. Ferraro.[66]
Accordingly, plaintiff's argument concerning cat's paw liability
through Peter Giella does not rescue plaintiff's retaliation
claim.

<u>Corrective Letter</u>

In her memorandum in opposition to summary judgment,
plaintiff contends that there is a factual dispute concerning a
"corrective letter" issued by defendant to Mr. Lobach which
precludes entry of summary judgment on plaintiff's Title VII
retaliation claim.  Specifically, plaintiff contends that
Bradley Piatt (an Operations Manager with PPL who supervised
Peter Giella, who in turn supervised Mr. Lobach) issued a "one
year corrective letter" to Mr. Lobach in late May or June 2007
requiring Mr. Lobach to, as the label suggests, correct and
improve his conduct at work.[67]  Plaintiff further contends that

---

[66]        Plaintiff's Memorandum at pages 7-8.

[67]        <u>Id.</u> at page 3; <u>see</u> Transcript of Telephonic Deposition of
Peter E. Giella taken August 23, 2013 (Document 41-5)("Giella Deposition"),
at pages 35-36.

Mr. Lobach testified during his deposition that the corrective letter he received was issued but only placed in his personnel file for six months.[68]

Based upon this discrepancy, plaintiff asserts that the issue of "[w]hether or not Lobach lied at his deposition is certainly an issue for a jury to consider."[69]  While plaintiff is correct that issues of credibility are reserved for the factfinder and credibility determinations are not the province of the court on a motion for summary judgment, Marino, 358 F.3d at 247, the parties do not dispute the fact that Mr. Piatt issued a corrective letter to Mr. Lobach and, most importantly, plaintiff provides no explanation whatsoever as to how or why the factual question of whether the "corrective letter" was issued for a period of one year or six months is material to plaintiff's retaliation claim.[70]  Accordingly, the one-year-versus-six-months factual dispute does not preclude entry of summary judgment in favor of defendant on plaintiff's Title VII retaliation claim.

---

[68]      Plaintiff's Memorandum at page 3; see Lobach Deposition at pages 17-18.

[69]      Plaintiff's Memorandum at page 3.

[70]      See id. at pages 2-5.

## CONCLUSION

For the reasons expressed above, I grant Defendant's Motion for Summary Judgment and enter judgment in favor of defendant PPL Corporation and against plaintiff Lori Hallman on plaintiff's claim in the Second Amended Complaint for retaliation under Title VII and the PHRA.